## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MIDWEST ATHLETICS AND SPORTS ALLIANCE LLC, | Case No. 8:17-CV-478 |
| Plaintiff, | |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| XEROX CORP., | |
| Defendant. | **JURY TRIAL REQUESTED IN OMAHA** |

Plaintiff Midwest Athletics and Sports Alliance LLC ("MASA") files this Complaint for Patent Infringement and Jury Demand against Defendant Xerox Corporation ("Defendant" or "Xerox") and alleges as follows:

### THE PARTIES

1.      MASA, a wholly-owned subsidiary of Midwest Youth A&S, Inc. (a Delaware public benefit corporation), is a Delaware limited liability corporation with its principal place of business at 1321 Jones Street, Suite 206, Omaha, NE 68102.

2.      MASA provides services, funding and equipment for youth sports organizations to help those organizations inspire youths in a positive way and promotes the value and importance of sports and physical activity in the development of children.  MASA believes in the principles of positive coaching and mentorship to not only ensure that each child learns the skills, tactics and strategies of the game but also learns the value of sportsmanship, problem-solving and leadership skills.  MASA's ultimate purpose is to see that every child has the ultimate sports experience and learns key life lessons that will be instrumental for them now and in the future.

3.      Upon information and belief, Xerox is an American corporation that sells document solutions and services, and document technology products worldwide.

1

4.      Upon information and belief, Xerox is a New York corporation, with its principal place of business at 201 Merritt 7, Norwalk, Connecticut, 06851.

## JURISDICTION AND VENUE

5.      This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant does business in this District and has, and continues to, infringe MASA's patents (described below) in this District.  Upon information and belief, Defendant is incorporated in the State of New York.  In addition, the Court has personal jurisdiction over Defendant because Defendant has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

8.      Venue is proper because, upon information and belief, Xerox has committed acts of patent infringement within the District and has a regular and established place of business located in the State of Nebraska.

9.      Upon information and belief, Xerox has committed acts of patent infringement in Nebraska, and throughout the United States, because it makes, uses, sells, offers for sale, and/or imports in Nebraska the Accused Products (identified below).

10.      Upon information and belief, Xerox has a regular and established place of business located in the State of Nebraska.  For example, upon information and belief, Xerox maintains corporate offices and/or a place of business located at 9300 Underwood Ave. #150, Omaha, NE 68114; 2025 S 17th St., Suite B, Lincoln NE 68502; 2716 13th St., Suite 7,

Columbus, NE 68601; 1314 O St., Lincoln, NE 68508; and 4526 F Street, Omaha, NE 68117. Furthermore, upon information and belief, Xerox's website indicates that it hires employees to work in Nebraska, such as Field Service Technicians.

## THE PATENTS-IN-SUIT

11.     MASA owns the following United States Patents: 6,203,005, 6,305,684, 6,411,314, 6,462,756, 6,509,974, 6,718,285, 6,724,998, 6,799,005, 6,909,856, 6,993,278, 7,502,582, 7,658,375, 7,720,425, 8,005,415, 8,019,255, 8,220,795, 8,554,089, 8,591,022, 8,634,113, and 8,805,239  (collectively referred to as the "MASA Patents").

12.     On March 20, 2001, U.S. Patent No. 6,203,005 ("the '3005 Patent"), entitled FEEDER APPARATUS FOR DOCUMENTS AND THE LIKE, was issued to Tomasz K. Bednarek and Jose S. Pioquinto.  A true and correct copy of the '3005 Patent is attached to this Complaint as Exhibit 1 and is incorporated by reference herein.

13.     All rights, title, and interest in the '3005 Patent have been assigned to MASA, which is the sole owner of the '3005 Patent.

14.     The '3005 Patent's abstract states that this patent is generally directed to a sheet feeder for engaging and removing a sheet of paper or other material from a stack and feeding it along a path.  The sheet feeder can include a skimmer, a bumper, a separator, and a guide plate.

15.     On October 23, 2001, U.S. Patent No. 6,305,684 ("the '684 Patent"), entitled FEED ROLLERS WITH REVERSING CLUTCH, was issued to Werner R. Lightner, Donald J. Stefanich, Jr., Jim T. Russo, Jose S. Pioquinto, and Paul E. Brodzik.  A true and correct copy of the '684 Patent is attached to this Complaint as Exhibit 2 and is incorporated by reference herein.

16.     All rights, title, and interest in the '684 Patent have been assigned to MASA, who is the sole owner of the '684 Patent.

3

17.    The '684 Patent's abstract states that this patent is generally directed to a sheet feeder for engaging and removing a sheet of paper or other material from a stack and feeding it along a path.  The sheet feeder can include a sheet separator designed for advancing the engaged sheet while retarding any adjacent sheets.

18.    On June 25, 2002, U.S. Patent No. 6,411,314 ("the '314 Patent"), entitled SYSTEM AND METHOD FOR REPRESENTING AND CONTROLLING A PRODUCTION PRINTING WORKFLOW, was issued to David R. Hansen and Robert K. Holzwarth.  A true and correct copy of the '314 Patent is attached to this Complaint as Exhibit 3 and is incorporated by reference herein.

19.    All rights, title, and interest in the '314 Patent have been assigned to MASA, who is the sole owner of the '314 Patent.

20.    The '314 Patent's abstract states that this patent is generally directed to a system and method for managing production printing workflow.

21.    On October 8, 2002, U.S. Patent No. 6,462,756 ("the '756 Patent"), entitled SYSTEM AND METHOD FOR VISUAL REPRESENTATION OF PAGES IN A PRODUCTION PRINTING WORKFLOW, was issued to David. R. Hansen and Robert K. Holzwarth.  A true and correct copy of the '756 Patent is attached to this Complaint as Exhibit 4 and is incorporated by reference herein.

22.    All rights, title, and interest in the '756 Patent have been assigned to MASA, who is the sole owner of the '756 Patent.

23.    The '756 Patent's abstract states that this patent is generally directed to a system and method for managing production printing workflow.  The system includes workflow

4

management software which manages and facilitates the procedural stages of the workflow including job origination, job preparation, job submission and job fulfillment.

24.     On January 21, 2003, U.S. Patent No. 6,509,974 ("the '974 Patent"), entitled AUTOMATED JOB CREATION FOR JOB PREPARATION, was issued to David R. Hansen. A true and correct copy of the '974 Patent is attached to this Complaint as Exhibit 5 and is incorporated by reference herein.

25.     All rights, title, and interest in the '974 Patent have been assigned to MASA, who is the sole owner of the '974 Patent.

26.     The '974 Patent's abstract states that this patent is generally directed to a system and method for providing production printing instructions for a printed end document to a job preparation station.

27.     On April 6, 2004, U.S. Patent No. 6,718,285 ("the '285 Patent"), entitled OPERATOR REPLACEABLE COMPONENT LIFE TRACKING SYSTEM, was issued to Thomas Leonard Schwartz, Richard Robert Tilney Carling, and Kenneth Thomas Doty.  A true and correct copy of the '285 Patent is attached to this Complaint as Exhibit 6 and is incorporated by reference herein.

28.     All rights, title, and interest in the '285 Patent have been assigned to MASA, who is the sole owner of the '285 Patent.

29.     The '285 Patent's abstract states that this patent is generally directed to operator replaceable component devices that enable an operator that is not a skilled field engineer or service technician, to perform maintenance on a digital printing system, resulting in significantly higher uptime for the press.

30.     On April 20, 2004, U.S. Patent No. 6,724,998 ("the '998 Patent"), entitled

IMAGE FORMING APPARATUS WITH VARIABLE TONING BIAS OFFSET SERVICE

UTILITY, was issued to Matthias Regelsberger, David Hockey and Anna Lairmore.  A true and

correct copy of the '998 Patent is attached to this Complaint as Exhibit 7 and is incorporated by

reference herein.

31.     All rights, title, and interest in the '998 Patent have been assigned to MASA, who

is the sole owner of the '998 Patent.

32.     The '998 Patent's abstract states that this patent is generally directed towards an

electrographic print engine that has a variable primary charger and toning bias which places the

machine in abnormal reproduction modes in order to provide service and diagnostic information

to troubleshoot subsystems involved in the electrographic process.

33.     On September 28, 2004, U.S. Patent No. 6,799,005 ("the '9005 Patent"), entitled

METHOD AND SYSTEM OF PRE-SELECTING ORDERED MEDIA IN A PRINTING

SYSTEMS, was issued to James E. Bodine and Thomas R. Hull.  A true and correct copy of the

'9005 Patent is attached to this Complaint as Exhibit 8 and is incorporated by reference herein.

34.     All rights, title, and interest in the '9005 Patent have been assigned to MASA,

who is the sole owner of the '9005 Patent.

35.     The '9005 Patent's abstract states that this patent is generally directed to a method

of pre-selecting ordered media in a printing system, wherein ordered media, such as tabs, are pre-

selected into a part for use in a print run and an unwanted part to be discarded.

36.     On June 21, 2005, U.S. Patent No. 6,909,856 ("the '856 Patent"), entitled

FUNCTIONALITY SWITCHING FOR MICR PRINTING, was issued to John F. Crichton.  A

true and correct copy of the '856 Patent is attached to this Complaint as Exhibit 9 and is

incorporated by reference herein.

37.     All rights, title, and interest in the '856 Patent have been assigned to MASA, who is the sole owner of the '856 Patent.

38.     The '856 Patent's abstract states that this patent is generally directed to an electrographic printing machine operable in combination with an installed one of a plurality of developing, or toning, stations.  Each of the plurality of toning stations is associated with a toner type, with one of the toning stations associated with Magnetic Ink Character Recognition ("MICR") toner.

39.     On January 31, 2006, U.S. Patent No. 6,993,278 ("the '278 Patent"), entitled FIXING DEVICE TRANSPORT FOR A DIGITAL PRINTER OR COPIER MACHINE, was issued to Gerhard Bartscher, Frank-Michael Morgenweck, Kai-Uwe Preissig, Domingo Rohde, Detlet Schulze-Hagenest, Ralf Gerald Allner, Thomas Biber, and Markus Weber.  A true and correct copy of the '278 Patent is attached to this Complaint as Exhibit 10 and is incorporated by reference herein.

40.     All rights, title, and interest in the '278 Patent have been assigned to MASA, who is the sole owner of the '278 Patent.

41.     The '278 Patent's abstract states that this patent is generally directed towards a digital printer or copier machine proposed for the single-sided or double-sided printing of a substrate, with at least one fixing device for fixing toner onto the substrate, whereby the fixing device has at least one heating device for fusing the toner.

42.     On March 10, 2009, U.S. Patent No. 7,502,582 ("the '582 Patent"), entitled METHOD AND APPARATUS FOR PRINTING USING A TANDEM ELECTROSTATOGRAPHIC PRINTER, was issued to Yee S. Ng and Robert C. Logel.  A true and correct copy of the '582 Patent is attached to this Complaint as Exhibit 11 and is

7

incorporated by reference herein.

43.     All rights, title, and interest in the '582 Patent have been assigned to MASA, who is the sole owner of the '582 Patent.

44.     The '582 Patent's abstract states that this patent is generally directed towards a tandem color electrostatographic printer apparatus having five or more color printing stations or modules for applying respective color separation toner images to a receiver member to form a pentachrome color image in a single pass.

45.     On Feb. 9, 2010, U.S. Patent No. 7,758,375 ("the '375 Patent"), entitled PRINTER AND DUAL TRAYS FOR IMAGE RECEIVER MEDIA SHEETS, was issued to Randal M. Wong, Juan Belon, and Petrica D. Balcan.  A true and correct copy of the '375 Patent is attached to this Complaint as Exhibit 12 and is incorporated by reference herein.

46.     All rights, title, and interest in the '375 Patent have been assigned to MASA, who is the sole owner of the '375 Patent.

47.     The '375 Patent's abstract states that this patent is generally directed towards a printer having a sheet tray, a driver for advancing sheets past a marking mechanism, and a picker to remove sheets from an aligned tray including a load position and a pick position.

48.     On May 18, 2010, U.S. Patent No. 7,720,425 ("the '425 Patent"), entitled METHOD AND APPARATUS FOR PRINTING USE A TANDEM ELECTROSTATOGRAPHIC PRINTER, was issued to Yee S. Ng and Robert C. Logel.  A true and correct copy of the '425 Patent is attached to this Complaint as Exhibit 13 and is incorporated by reference herein.

49.     All rights, title, and interest in the '425 Patent have been assigned to MASA, who is the sole owner of the '425 Patent.

50.     The '425 Patent's abstract states that this patent is generally directed towards a tandem color electrostatographic printer apparatus having five or more color printing stations or modules for applying respective color separation toner images to a receiver member to form a pentachrome color image in a single pass.

51.     On Aug. 23, 2011, U.S. Patent No. 8,005,415 ("the '415 Patent"), entitled METHOD AND APPARATUS FOR PRINTING USE A TANDEM ELECTROSTATOGRAPHIC PRINTER, was issued to Yee S. Ng and Robert C. Logel.  A true and correct copy of the '415 Patent is attached to this Complaint as Exhibit 14 and is incorporated by reference herein.

52.     All rights, title, and interest in the '415 Patent have been assigned to MASA, who is the sole owner of the '415 Patent.

53.     The '415 Patent's abstract states that this patent is generally directed towards a tandem color electrostatographic printer apparatus having five or more color printing stations or modules for applying respective color separation toner images to a receiver member to form a pentachrome color image in a single pass.

54.     On Sept. 12, 2011, U.S. Patent No. 8,019,255 ("the '255 Patent"), entitled ALIGNMENT METHOD FOR A PLURALITY OF COUPLED DIGITAL PRINT ENGINES, was issued to Michael T. Dobbertin and Alan E. Rapkin.  A true and correct copy of the '255 Patent is attached to this Complaint as Exhibit 15 and is incorporated by reference herein.

55.     All rights, title, and interest in the '255 Patent have been assigned to MASA, who is the sole owner of the '255 Patent.

56.     The '255 Patent's abstract states that this patent is generally directed towards an adjustment method to align printing engines in a print assembly that is capable of printing on a

receiver to form one or more final prints and includes corrections for cross-track misregistration.

57.     On July 17, 2012, U.S. Patent No. 8,220,795 ("the '795 Patent"), entitled PRINTER AND DUAL TRAYS FOR IMAGE RECEIVER MEDIA SHEETS, was issued to Randal M. Wong, Juan Belon, and Petrica D. Balcan.  A true and correct copy of the '795 Patent is attached to this Complaint as Exhibit 16 and is incorporated by reference herein.

58.     All rights, title, and interest in the '795 Patent have been assigned to MASA, who is the sole owner of the '795 Patent.

59.     The '795 Patent's abstract states that this patent is generally directed towards a printer having a sheet tray, a drive for advancing sheets past a marking mechanism, and a picker to remove sheets from an aligned tray.

60.     On Oct. 8, 2013, U.S. Patent No. 8,554,089 ("the '089 Patent"), entitled JOB ERROR CORRECTION IN A MULTICOLOR ELECTROPHOTOGRAPHIC PRINT ENGINE, was issued to James D. Shifley, Alan J. Swire, and Thomas N. Tombs.  A true and correct copy of the '089 Patent is attached to this Complaint as Exhibit 17 and is incorporated by reference herein.

61.     All rights, title, and interest in the '089 Patent have been assigned to MASA, who is the sole owner of the '089 Patent.

62.     The '089 Patent's abstract states that this patent is generally directed towards a method and system for printing image documents using a variety of toners where some toners use a multi-development station having two or more development stations.  These toners are co-printed prior to fixing on the receiver by the multi-development station.

63.     On Nov. 26, 2013, U.S. Patent No. 8,591,022 ("the '022 Patent"), entitled PRINTING APPARATUS WITH PIVOTABLE DUPLEXING UNIT, was issued to Slew Pern

Chuang, Richard A. Murray, Venkatesh Mysore Nagaraja Rao, and Keng Leong Ng.  A true and correct copy of the '022 Patent is attached to this Complaint as Exhibit 18 and is incorporated by reference herein.

64.     All rights, title, and interest in the '022 Patent have been assigned to MASA, who is the sole owner of the '022 Patent.

65.     The '022 Patent's abstract states that this patent is generally directed towards a pivotable duplexing unit attached to the wall of a printer using a hinge having an axis that is substantially perpendicular to the base.

66.     On Jan. 21, 2014, U.S. Patent No. 8,634,113 ("the '113 Patent"), entitled RECORDING MEDIA PATH IN A MULTIFUNCTION PRINTER, was issued to Richard A. Murray.  A true and correct copy of the '113 Patent is attached to this Complaint as Exhibit 19 and is incorporated by reference herein.

67.     All rights, title, and interest in the '113 Patent have been assigned to MASA, who is the sole owner of the '113 Patent.

68.     The '113 Patent's abstract states that this patent is generally directed towards a multifunction printer which includes a printing apparatus having a printer chassis having a media input region, a printing region, a media support element, a carriage configured to move a printhead in a carriage scan direction along a printing region, and a plurality of rollers configured to transport a recording medium from the media input region across the media support element and to the printing region.  The multifunction printer also includes a scanning apparatus to convert an image into digitized data, the scanning apparatus including a base that is affixed to the printer chassis, wherein the base of the scanning apparatus comprises a guide for the recording medium.

69.     On Aug. 12, 2014, U.S. Patent No. 8,805,239 ("the '239 Patent"), entitled ACTUATION DEVICE FOR PRESSURE ROLLERS, was issued to Lennardt Jader and Peter Schmidt.  A true and correct copy of the '239 Patent is attached to this Complaint as Exhibit 20 and is incorporated by reference herein.

70.     All rights, title, and interest in the '239 Patent have been assigned to MASA, who is the sole owner of the '239 Patent.

71.     The '239 Patent's abstract states that this patent is generally directed towards a device for moving a plurality of pressure rollers relative to respective counter rollers in a printing machine, wherein, in a non-energy mode, the pressure rollers are arranged in a non-contact position.

## THE ACCUSED PRODUCTS

72.     Upon information and belief, Xerox makes, uses, sells, offers for sale, and/or imports into the United States and this District a variety of office equipment, including printers, scanners, and/or multifunction systems that include functionality such as printing, scanning and copying (the "Xerox Office Equipment").

73.     The Xerox Office Equipment includes a variety of models, including those referred to as WorkCentre, VersaLink, Phaser, iGen, Brenva, ColorQube and Color (the "Xerox Printer Models").  Upon information and belief, Xerox makes, uses, sells, offers for sale, and/or imports into the United States and this District the Xerox Office Equipment, including the Xerox Printer Models.

74.     A depiction of a WorkCentre printer is provided below:



http://www.office.xerox.com/multifunction-printer/multifunction-under-30ppm/workcentre-5300-series/enus.html.

75.     Upon information and belief, various models of the WorkCentre printers (e.g., WorkCentre 5335, 5330, 5325) use one or more of the MASA Patents.

76.     A depiction of a Versalink printer is provided below:



http://www.office.xerox.com/printers/color-printers/versalink-c400/enus.html

77.     Upon information and belief, various models of the Versalink printers (e.g., B400, C400) use one or more of the MASA Patents.

78.     A depiction of a Phaser printer (e.g., Phaser 5500, 5550, 6500, 6505, 6510, 7500, and 7800) is provided below:



http://www.office.xerox.com/printers/color-printers/phaser-7500/enus.html

79.     Upon information and belief, various models of the Phaser printers (e.g., Phaser 5500, 5550, 6500, 6505, 6510, 7500, and 7800) use one or more of the MASA Patents.

80.     A depiction of an iGen printer is provided below:



https://www.xerox.com/digital-printing/digital-printing-press/color-printing/xerox-igen5/enus.html

81.     Upon information and belief, various models of the iGen printers (e.g., iGen 5) use one or more of the MASA Patents.

82.     A depiction of a Brenva printer is provided below:



https://www.xerox.com/digital-printing/digital-printing-press/color-printing/brenva-hd/enus.html

83.     Upon information and belief, various models of the Brenva printers (e.g., Brenva HD Production Inkjet Press) use one or more of the MASA Patents.

84.     A depiction of a ColorQube printer is provided below:



http://www.office.xerox.com/multifunction-printer/color-multifunction/colorqube-9201-9202-9203/enus.html

85.     Upon information and belief, various models of the ColorQube printers (e.g., ColorQube 9201, 9202, 9203) use one or more of the MASA Patents.

86.     A depiction of a Color printer (e.g. Xerox Color 800/1000 Press and Xerox Color 800i/1000i Press) is provided below:



https://www.xerox.com/digital-printing/printers/digital-press/xerox-800-1000/enus.html

87.     Upon information and belief, various models of the Color (e.g., Xerox Color 800i/1000) use one or more of the MASA Patents.

88.     Upon information and belief, Xerox also makes, uses, sells, offers for sale, and/or imports into the United States and this District its Xerox FreeFlow® (Print Server, Core, Publisher) and IntegratedPLUS Finishing Solution (collectively "FreeFlow").

89.     Upon information and belief, FreeFlow is compatible with a wide variety of Xerox's multifunction units, digital presses, production printers and copiers, and continuous feed printers, including but not limited to, the following:

*Multifunction*: Xerox® D136; DocuColor™ 242/252/260; Xerox® 700i/700; Xerox® Color 550/560/570; Xerox® Color C60/C70; Xerox® D95A/D110/D125; Xerox® D136

*Digital Presses*: DocuColor™ 7002/8002; DocuColor 7000AP/8000AP; DocuColor™ 8080; Xerox® Versant® 80 Press; Xerox® Versant® 2100 Press; Xerox® Brenva™ HD Production Inkjet Press; Xerox® Color 8250; Xerox iGen3™; Xerox iGen4™ Xerox

iGen4™ Diamond Edition; Xerox iGen4™ EXP; Xerox® iGen® 5 Press; Xerox iGen™ 150

***Production Printers & Copiers***: Xerox® D136; Color 800i/1000i Presses; DocuColor™ 242/252/260; DocuColor™ 7000/8000; DocuPrint™ 100MX; DocuPrint™ 115MX; DocuPrint™ 135MX; DocuPrint™ 155MX; DocuPrint™ 180MX; DocuTech™ 128 HighLight Color; DocuTech™ 155 HighLight Color; DocuTech™ 180 HighLight Color; DocuTech™ 6100; DocuTech™ 6115; DocuTech™ 6135; DocuTech™ 6135 ExcellencePlus Series; DocuTech™ 6155; DocuTech™ 6180; DocuTech™ 6180 ExcellencePlus Series; Xerox® 700i/700; Xerox® 770; Xerox 4112/4127™ EPS; Xerox 4112/4127™ C/P; Xerox® Color C75 Press; Xerox® Color 550/560/570; Xerox® Color C60/C70; Xerox® D95A/D110/D125; Xerox® D136; Xerox® Color J75 Press; Xerox Nuvera™ 1XX EA Series; Xerox Nuvera™ 200/288/314 EA

***Continuous Feed Printers***: CiPress™ 325 / CiPress™ 500; DocuPrint™ 525; DocuPrint™ 1050; Xerox® 490/980™ Xerox® 495™; Xerox® 650/1300™

https://www.xerox.com/digital-printing/workflow/dfes-controllers/freeflow-print-server/enus.html

90.     Upon information and belief, Xerox's FreeFlow® suite of software uses one or more of the MASA patents.

## COUNT I
### (Direct Infringement of the '3005 Patent pursuant to 35 U.S.C. § 271(a))

91.     MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

92.     Defendant has infringed and continues to infringe one or more claims of the '3005 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

93.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

94.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including, but not limited to, Xerox WorkCentre 5335/5330/5325 and Xerox Phaser 6500, and similar printers, have been without the permission, consent, authorization, or license of MASA.

95.      By way of example, Defendant's products and services, including the WorkCentre 5335, 5330 and 5325 and Xerox Phaser 6500 models infringe at least one claim, including at least claim 1, of the '3005 Patent.

96.      For example, upon information and belief, these models include a sheet feeder that includes a skimmer for engaging and removing a sheet from one end of a stack of sheets and feeding the engaged sheet edgewise along a feed path, said skimmer comprising a first friction element including a generally cylindrical endless rotating peripheral surface carried on a support defined at least in part by a rotating shaft, as recited in at least claim 1 of the '3005 Patent.

97.      Furthermore, upon information and belief, these models include a sheet feeder that includes a separator spaced downstream along the feed path from the skimmer for advancing the engaged sheet while retarding any adjacent sheets, as recited in at least claim 1 of the '3005 Patent.

98.      Furthermore, upon information and belief, these models include a sheet feeder that includes a first guide plate extending between said skimmer and said separator substantially parallel to said feed path to guide the engaged single sheet substantially along the feed path, preventing buckling of the engaged single sheet perpendicular to the feed path, wherein said first guide plate is supported at least in part by and mounted to be pivotable independent of the rotation of said rotating shaft with respect to said support, as recited in at least claim 1 of the '3005 Patent.

99.      As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

100.    Defendant's infringement of the '3005 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT II
### (Direct Infringement of the '684 Patent pursuant to 35 U.S.C. § 271(a))

101.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

102.    Defendant has infringed and continues to infringe one or more claims of the '684 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

103.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

104.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Phaser 5500/5550, and similar printers, have been without the permission, consent, authorization, or license of MASA.

105.    By way of example, Defendant's products and services, including the Xerox Phaser 5500/5550 infringe at least one claim, including at least claim 1, of the '684 Patent.

106.    For example, upon information and belief, these models include a sheet separator that includes a sheet path along which a sheet having a first and second surfaces is passed, as recited in at least claim 1 of the '684 Patent.

107.    Furthermore, upon information and belief, these models include a sheet separator that includes an advancing roller positioned to drive forward the first surface of a sheet in said sheet path, as recited in at least claim 1 of the '684 Patent.

108.    Furthermore, upon information and belief, these models include a sheet separator that includes a retarding roller positioned to drive the second surface of a sheet in said sheet path, as recited in at least claim 1 of the '684 Patent.

109.    Furthermore, upon information and belief, these models include a sheet separator that includes a drive for driving said retarding roller backward, as recited in at least claim 1 of the '684 Patent.

110.    Furthermore, upon information and belief, these models include a sheet separator that includes a roller shaft on which said retarding roller is mounted in fixed relation, said roller shaft extending axially from said retarding roller, as recited in at least claim 1 of the '684 Patent.

111.    Furthermore, upon information and belief, these models include a sheet separator that includes a friction clutch spaced from said retarding roller and connecting said drive with said roller shaft, said clutch permitting said retarding roller to be driven forward when fewer than two sheets are engaged between said advancing and retarding rollers, and said clutch permitting said retarding roller to be driven backward when two or more sheets are engaged by said advancing and retarding rollers, as recited in at least claim 1 of the '684 Patent.

112.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

113.    Defendant's infringement of the '684 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## <u>COUNT III</u>
### (Direct Infringement of the '314 Patent pursuant to 35 U.S.C. § 271(a))

114.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

115.    Defendant has infringed and continues to infringe one or more claims of the '314 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

116.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

117.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, the FreeFlow® line of software (including IntergratedPLUS Finishing Solution), have been without the permission, consent, authorization or license of MASA.

118.    By way of example, Defendant's products and services, including the FreeFlow® line of software (including IntergratedPLUS Finishing Solution) infringe at least one claim, including at least claim 1, of the '314 Patent.

119.    For example, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow that includes a display, as recited in at least claim 1 of the '314 Patent.

120.    Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow that includes a first document object representing a document, said document further comprising content and formatting, said formatting defining at least one page in said document, said first document object being associated with a first visual representation on said display, as recited in at least claim 1 of the '314 Patent.

121.    Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow that includes a document ticket object representing global document attributes, said document ticket object being associated with a second visual representation on said display and

capable of being associated with said first document object, as recited in at least claim 1 of the '314 Patent.

122.     Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow that includes a page object representing a page attribute of one of said at least one page, said page object being associated with a third visual representation on said display and capable of being associated with said first document object, as recited in at least claim 1 of the '314 Patent.

123.     Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow that includes a first user input device for selectively associating at least two of said first, second and third visual representations, as recited in at least claim 1 of the '314 Patent.

124.     Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow that includes an association of said first, second and third visual representations results in association of said respective objects, as recited in at least claim 1 of the '314 Patent.

125.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

126.     Defendant's infringement of the '314 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT IV
### (Direct Infringement of the '756 Patent pursuant to 35 U.S.C. § 271(a))

127.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

128.    Defendant has infringed and continues to infringe one or more claims of the '756 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

129.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

130.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, the FreeFlow® line of software (including IntergratedPLUS Finishing Solution), have been without the permission, consent, authorization or license of MASA.

131.    By way of example, Defendant's products and services, including the FreeFlow® line of software (including IntergratedPLUS Finishing Solution) infringe at least one claim, including at least claim 1, of the '756 Patent.

132.    For example, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising a display, as recited in at least claim 1 of the '756 Patent.

133.    Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising a first document object representing a document, said document further comprising content and formatting, said formatting defining at least one page in said document, said first document object being associated with a first visual representation on said display, as recited in at least claim 1 of the '756 Patent.

134.     Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising a document ticket object representing global document attributes, said document ticket object being associated with a second visual representation on said display and capable of being associated with said first document object, as recited in at least claim 1 of the '756 Patent.

135.     Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising a page object representing a page attribute of one of said at least one page, said page object being associated with a third visual representation on said display and capable of being associated with said first document object, as recited in at least claim 1 of the '756 Patent.

136.     Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising a first user input device for selectively associating at least two of said first, second and third visual representations, as recited in at least claim 1 of the '756 Patent.

137.     Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising a second user input device for creating said page object, said second user input device operative to allow selection of said page attribute, setting of a value of said page attribute and selection of one or more of said at least one page in said document to apply said page attribute to wherein upon application, one or more of said page objects are created and

associated with each of said one or more of said at least one page and said corresponding document object, as recited in at least claim 1 of the '756 Patent.

138.    Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising wherein association of said first, second and third visual representations results in association of said respective objects, as recited in at least claim 1 of the '756 Patent.

139.    Furthermore, upon information and belief, this line of software includes an interface, implemented in a computer, for representing and controlling a production printing workflow comprising wherein the said applied page attribute is visually represented on a visual representation of said one or more of said at least one page, as recited in at least claim 1 of the '756 Patent.

140.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

141.    Defendant's infringement of the '756 Patent has injured and continues to injure MASA in an amount to be proven at trial.

### COUNT V
**(Direct Infringement of the '974 Patent pursuant to 35 U.S.C. § 271(a))**

142.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

143.    Defendant has infringed and continues to infringe one or more claims of the '974 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

144.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

145.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, the FreeFlow® line of software (including IntergratedPLUS Finishing Solution), have been without the permission, consent, authorization or license of MASA.

146.    By way of example, Defendant's products and services, including the FreeFlow® line of software (including IntergratedPLUS Finishing Solution) infringe at least one claim, including at least claim 1, of the '974 Patent.

147.    For example, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising receiving the plurality of documents in electronic format from a job submission station operator, as recited in at least claim 1 of the '974 Patent.

148.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising transmitting the documents in electronic format to a computer, as recited in at least claim 1 of the '974 Patent.

149.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting,

the method comprising placing said plurality of documents into an electronic folder in the computer, as recited in at least claim 1 of the '974 Patent.

150.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising arranging the plurality of documents in said folder in the order the documents are to be printed in the printed end document, as recited in at least claim 1 of the '974 Patent.

151.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising said computer automatically converting the plurality of documents into a ready for printer format and merging the plurality of documents together to create a single document in said ready for printer format where the plurality of documents comprise a main portion and at least one exception page, as recited in at least claim 1 of the '974 Patent.

152.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising delaying the printing of the main portion at a production device

associated with the single document, while the at least one exception page is printed at an alternate output device, as recited in at least claim 1 of the '974 Patent.

153.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising receiving at the production device the at least one exception page from the alternate output device, as recited in at least claim 1 of '974 Patent.

154.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising printing at the production device the main portion and where the production device collates the at least one exception page with the main portion, as recited in at least claim 1 of the '974 Patent.

155.    Furthermore, upon information and belief, this line of software performs a method for providing production printing instructions relating to a printed end document to a job preparation station, wherein the printed end document comprises a plurality of documents in a predefined order, the plurality of documents each comprising content and document formatting, the method comprising said computer automatically creating an electronic job ticket providing global attributes for the printed end document, as recited in at least claim 1 of the '974 Patent.

156.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

157.    Defendant's infringement of the '974 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT VI
### (Direct Infringement of the '285 Patent pursuant to 35 U.S.C. § 271(a))

158.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

159.    Defendant has infringed and continues to infringe one or more claims of the '285 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

160.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

161.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Phaser 7800, and similar printers, have been without the permission, consent, authorization or license of MASA.

162.    By way of example, Defendant's products and services, including the Xerox Phaser 7800 infringe at least one claim, including at least claim 1, of the '285 Patent.

163.    For example, upon information and belief, these models include a system with operator enabled maintenance comprising at least one computational element within said system, as recited in at least claim 1 of the '285 Patent.

164.    Furthermore, upon information and belief, these models include a system with operator enabled maintenance comprising a plurality of operator replaceable component (ORC)

devices within said system, each of said ORC devices having an expected life span, as recited in at least claim 1 of the '285 Patent.

165.    Furthermore, upon information and belief, these models include a system with operator enabled maintenance comprising a use mechanism coupled to each said computational element and said ORC devices, said use mechanism tracking use of at least one of said ORC devices using a predetermined parameter, as recited in at least claim 1 of the '285 Patent.

166.    Furthermore, upon information and belief, these models include a system with operator enabled maintenance comprising a comparison mechanism that compares use of said ORC devices to said expected life span, as recited in at least claim 1 of the '285 Patent.

167.    Furthermore, upon information and belief, these models include a system with operator enabled maintenance comprising an operator alert mechanism responsive to said comparison mechanism to provide said operator alert when the result of said comparison satisfies a predetermined parameter representing at least one of said expected life spans where said expected life span for a single of said ORC devices is the shortest expected life span, as recited in at least claim 1 of the '285 Patent.

168.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

169.    Defendant's infringement of the '285 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT VII
### (Direct Infringement of the '998 Patent pursuant to 35 U.S.C. § 271(a))

170.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

171.    Defendant has infringed and continues to infringe one or more claims of the '998 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

172.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

173.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Phaser 6500, and similar printers, have been without the permission, consent, authorization or license of MASA.

174.    By way of example, Defendant's products and services, including the Xerox Phaser 6500 infringe at least one claim, including at least claim 1, of the '998 Patent.

175.    For example, upon information and belief, these models include an image forming apparatus comprising a primary charger for providing a primary charging voltage on an image support, as recited in at least claim 1 of the '998 Patent.

176.    Furthermore, upon information and belief, these models include an image forming apparatus comprising an image support for supporting an electrostatic latent image on the surface thereof, as recited in at least claim 1 of the '998 Patent.

177.    Furthermore, upon information and belief, these models include an image forming apparatus comprising a developing unit having a developing agent support, the developing agent support retaining a developing agent, including toner and carriers, contained in the developing unit, and the developing unit converting the latent image on the image support into a toner image by causing the toner to adhere to the surface of the image support, as recited in at least claim 1 of the '998 Patent.

178.    Furthermore, upon information and belief, these models include an image forming apparatus comprising a developing bias supplying unit for supplying a developing bias voltage to

the developing agent support of the developing unit, as recited in at least claim 1 of the '998 Patent.

179.    Furthermore, upon information and belief, these models include an image forming apparatus comprising a controller for setting the developing bias voltage and primary charging voltage at predetermined values undesirable for normal image forming operation in order to provide diagnostic information on the image forming apparatus, as recited in at least claim 1 of the '998 Patent.

180.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

181.    Defendant's infringement of the '998 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT VIII
### (Direct Infringement of the '9005 Patent pursuant to 35 U.S.C. § 271(a))

182.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

183.    Defendant has infringed and continues to infringe one or more claims of the '9005 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

184.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

185.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, the FreeFlow® line of software (including IntegratedPLUS Finishing Solution), have been without the permission, consent, authorization or license of MASA.

186. By way of example, Defendant's products and services, including the FreeFlow® line of software (including IntergratedPLUS Finishing Solution) infringe at least one claim, including at least claim 1, of the '9005 Patent.

187. For example, upon information and belief, this line of software includes a system for pre-selecting ordered media in a printing system comprising an input source to store at least one set of the ordered media., as recited in at least claim 1 of the '9005 Patent.

188. Furthermore, upon information and belief, this line of software includes a system for pre-selecting ordered media in a printing system comprising a user interface having an input device to select the ordered media from a paper catalog, and to pre-select a first part of the ordered media set to be used in a print job and a second unwanted part of the ordered media set to be discarded, as recited in at least claim 1 of the '9005 Patent.

189. Furthermore, upon information and belief, this line of software includes a system for pre-selecting ordered media in a printing system comprising a first job output, as recited in at least claim 1 of the '9005 Patent.

190. Furthermore, upon information and belief, this line of software includes a system for pre-selecting ordered media in a printing system comprising a second job output, as recited in at least claim 1 of the '9005 Patent.

191. Furthermore, upon information and belief, this line of software includes a system for pre-selecting ordered media in a printing system comprising a central processing unit configured to send the first part of the ordered media set directly to the first job output and the second part of the ordered media set directly to the second job output, as recited in at least claim 1 of the '9005 Patent.

192.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

193.     Defendant's infringement of the '9005 Patent has injured and continues to injure MASA in an amount to be proven at trial.

**COUNT IX**
**(Direct Infringement of the '856 Patent pursuant to 35 U.S.C. § 271(a))**

194.     MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

195.     Defendant has infringed and continues to infringe one or more claims of the '856 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

196.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

197.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Phaser 7800, and similar printers, have been without the permission, consent, authorization or license of MASA.

198.     By way of example, Defendant's products and services, including the Xerox Phaser 7800 infringe at least one claim, including at least claim 1, of the '856 Patent.

199.     For example, upon information and belief, these models include a method of operating an electrographic printing machine, comprising the step of installing one of a plurality of toning stations into the printing machine, each of the plurality of toning stations associated with a toner type, and having an indicator corresponding to the toner type, as recited in at least claim 1 of the '856 Patent.

200.     Furthermore, upon information and belief, these models include a method of operating an electrographic printing machine, comprising the step of sensing the indicator of the installed one of the plurality of toning stations to determine the toner type of the installed one of the plurality of toning stations, as recited in at least claim 1 of the '856 Patent.

201.     Furthermore, upon information and belief, these models include a method of operating an electrographic printing machine, comprising the step of responsive to the sensing step determining that the installed one of the plurality of toning stations corresponds to toner of a first type, selecting a set of process setpoints associated with the toner of the first type, as recited in at least claim 1 of the '856 Patent.

202.     Furthermore, upon information and belief, these models include a method of operating an electrographic printing machine, comprising the step of operating the printing machine to electrographically print images using the selected set of process setpoints and the installed one of the toning stations, as recited in at least claim 1 of the '856 Patent.

203.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

204.     Defendant's infringement of the '856 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT X
### (Direct Infringement of the '278 Patent pursuant to 35 U.S.C. § 271(a))

205.     MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

206.     Defendant has infringed and continues to infringe one or more claims of the '278 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

35

207.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

208.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Color 800/1000 and 800i/1000i Press, and similar printers, have been without the permission, consent, authorization or license of MASA.

209.    By way of example, Defendant's products and services, including the Xerox Color 800/100 Press infringe at least one claim, including at least claim 1, of the '278 Patent.

210.    For example, upon information and belief, these models include a digital printer or copier machine for the single-sided or double-sided printing of a substrate using at least one toner, as recited in at least claim 1 of the '278 Patent.

211.    Furthermore, upon information and belief, these models include at least one fixing device for fixing the toner onto the substrate, whereby the fixing device has at least one heating device for fusing the toner, as recited in at least claim 1 of the '278 Patent.

212.    Furthermore, upon information and belief, these models include at least one transport device, in order to supply the substrate to the heating device, to guide it past the heating device and/or to further transport it from the heating device, as recited in at least claim 1 of the '278 Patent.

213.    Furthermore, upon information and belief, these models include a transport device that has at least one suction belt that has a number of through-passage openings and that can be impinged with a vacuum, characterized in that the suction belt is constructed as a mesh having stays forming through-passage openings, as recited in at least claim 1 of the '278 Patent.

214.    Furthermore, upon information and belief, these models include the entire cross-section flow-through area of said through-passage openings being markedly greater than the entire area of said stays between said through-passage openings, as recited in at least claim 1 of the '278 Patent.

215.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

216.    Defendant's infringement of the '278 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT XI
**(Direct Infringement of the '582 Patent pursuant to 35 U.S.C. § 271(a))**

217.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

218.    Defendant has infringed and continues to infringe one or more claims of the '582 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

219.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

220.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox iGen 5 Press, and similar printers, have been without the permission, consent, authorization or license of MASA.

221.    By way of example, Defendant's products and services, including the Xerox iGen 5 Press, infringe at least one claim, including at least claim 1, of the '582 Patent.

222.    For example, upon information and belief, these models perform a method of printing to form colored images with improved color gamut and enhanced gloss, the method

comprising forming a color print using five or more different color pigments which in combination form at least a pentachrome color image, as recited in at least claim 1 of the '582 Patent.

223.    Furthermore, upon information and belief, these models perform a method of printing to form colored images with improved color gamut and enhanced gloss, the method comprising depositing a clear toner overcoat to the at least pentachrome color image, as recited in at least claim 1 of the '582 Patent.

224.    Furthermore, upon information and belief, these models perform a method of printing to form colored images with improved color gamut and enhanced gloss, the method comprising the clear toner overcoat is formed as a receiver and image dependent inverse mask, as recited in at least claim 1 of the '582 Patent.

225.    Furthermore, upon information and belief, these models perform a method of printing to form colored images with improved color gamut and enhanced gloss, the method comprising subjecting the clear toner overcoat and the at least pentachrome color image to a gloss enhancing process, as recited in at least claim 1 of the '582 Patent.

226.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

227.    Defendant's infringement of the '582 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT XII
### (Direct Infringement of the '375 Patent pursuant to 35 U.S.C. § 271(a))

228.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

229.     Defendant has infringed and continues to infringe one or more claims of the '375 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

230.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

231.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox ColorQube 9201/9202/9203, and similar printers, have been without the permission, consent, authorization or license of MASA.

232.     By way of example, Defendant's products and services, including the Xerox ColorQube 9201/9202/9203, infringe at least one claim, including at least claim 1, of the '375 Patent.

233.     For example, upon information and belief, these models include a printer comprising a marking mechanism for producing an image on media sheets, as recited in at least claim 1 of the '375 Patent.

234.     Furthermore, upon information and belief, these models include a printer comprising first and second trays adapted to receive media sheets, as recited in at least claim 1 of the '375 Patent.

235.     Furthermore, upon information and belief, these models include a printer comprising a sheet feeding mechanism with a drive for advancing media sheets past the marking mechanism, said sheet feeding mechanism having a picker to remove media sheets from trays, as recited in at least claim 1 of the '375 Patent.

236.     Furthermore, upon information and belief, these models include a printer comprising a media load position for each of said first and second trays at which the trays are

accessible to an operator for inserting a supply of media sheets, as recited in at least claim 1 of the '375 Patent.

237.     Furthermore, upon information and belief, these models include a printer comprising a media pick position for each of said first and second trays at which the trays are aligned with the picker, as recited in at least claim 1 of the '375 Patent.

238.     Furthermore, upon information and belief, these models include a printer comprising a mechanism adapted to selectively move each of said first and second trays between its media load position and its pick position, said trays being aligned side by side when both at their pick positions such that the picker can simultaneously remove a sheet from each tray, as recited in at least claim 1 of the '375 Patent.

239.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

240.     Defendant's infringement of the '375 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT XIII
### (Direct Infringement of the '425 Patent pursuant to 35 U.S.C. § 271(a))

241.     MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

242.     Defendant has infringed and continues to infringe one or more claims of the '425 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

243.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

244.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox iGen 5 Press, and similar printers, have been without the permission, consent, authorization or license of MASA.

245.    By way of example, Defendant's products and services, including the Xerox iGen 5 Press, infringe at least one claim, including at least claim 1, of the '425 Patent.

246.    For example, upon information and belief, these models perform, in a tandem color electrostatographic printer apparatus having five or more color printing stations for applying respective color separation toner images to a receiver member, a method of forming a pentachrome color image comprising passing a receiver member through the printer apparatus to serially deposit thereon in a single pass at least five different colors which form various combinations of color at different pixel locations to form a pentachrome image thereon, as recited in at least claim 1 of the '425 Patent.

247.    Furthermore, upon information and belief, these models perform, in a tandem color electrostatographic printer apparatus having five or more color printing stations for applying respective color separation toner images to a receiver member, a method of forming a pentachrome color image comprising a first fusing step of fusing the pentachrome image by passing the receiver member through a fuser station, as recited in at least claim 1 of the '425 Patent.

248.    Furthermore, upon information and belief, these models perform, in a tandem color electrostatographic printer apparatus having five or more color printing stations for applying respective color separation toner images to a receiver member, a method of forming a pentachrome color image comprising passing the receiver member a second time through the

printer apparatus, and depositing a clear toner overcoat to the fused pentachrome toner image, as recited in at least claim 1 of the '425 Patent.

249.     Furthermore, upon information and belief, these models perform, in a tandem color electrostatographic printer apparatus having five or more color printing stations for applying respective color separation toner images to a receiver member, a method of forming a pentachrome color image comprising a second fusing step of passing the receiver member with the clear toner overcoat and fused pentachrome toner image again through the aforementioned fuser station to fix the clear toner overcoat to the receiver member, as recited in at least claim 1 of the '425 Patent.

250.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

251.     Defendant's infringement of the '425 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT XIV
### (Direct Infringement of the '415 Patent pursuant to 35 U.S.C. § 271(a))

252.     MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

253.     Defendant has infringed and continues to infringe one or more claims of the '415 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

254.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

255.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox iGen 5 Press, and similar printers, have been without the permission, consent, authorization or license of MASA.

256.    By way of example, Defendant's products and services, including the Xerox iGen 5 Press, infringe at least one claim, including at least claim 1, of the '415 Patent.

257.    For example, upon information and belief, these models include a system for printing color images comprising a tandem color electrostatographic printer apparatus having five or more color printing stations for applying respective color separation toner images to a receiver member passing therethrough in a single pass to form a pentachrome color image, as recited in at least claim 1 of the '415 Patent.

258.    Furthermore, upon information and belief, these models include a system for printing color images comprising a fusing station for fusing the pentachrome image, as recited in at least claim 1 of the '415 Patent.

259.    Furthermore, upon information and belief, these models include a system for printing color images comprising a clear toner overcoat printing station for applying a clear toner overcoat to the fused pentachrome toner image, as recited in at least claim 1 of the '415 Patent.

260.    Furthermore, upon information and belief, these models include a system for printing color images comprising a belt glosser for providing enhanced gloss to the pentachrome color image having the clear toner overcoat, as recited in at least claim 1 of the '415 Patent.

261.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

262.     Defendant's infringement of the '415 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT XV
### (Direct Infringement of the '255 Patent pursuant to 35 U.S.C. § 271(a))

263.     MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

264.     Defendant has infringed and continues to infringe one or more claims of the '255 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

265.     Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

266.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Phaser 6500 and Xerox WorkCentre 6505, and similar printers, have been without the permission, consent, authorization or license of MASA.

267.     By way of example, Defendant's products and services, including the Xerox Phaser 6500 and Xerox WorkCentre 6505, infringe at least one claim, including at least claim 1, of the '255 Patent.

268.     For example, upon information and belief, these models perform a method to align an electrophotographic printing engines in a plurality of different print assemblies that are each capable of printing on a receiver to form one or more final prints to form an apparatus for digital printing including corrections for cross-track misregistration comprising measuring each of the print assemblies to determine the location of a fixed component of the module relative to a receiver path in the x, y and z directions, as recited in at least claim 1 of the '255 Patent.

269.     Furthermore, upon information and belief, these models perform a method to align an electrophotographic printing engines in a plurality of different print assemblies that are each capable of printing on a receiver to form one or more final prints to form an apparatus for digital printing including corrections for cross-track misregistration comprising aligning two or more printing engines in an x and y direction by providing alignment features on the printing assemblies that align the assemblies in an x and y direction according to the measurements and that positioning the assemblies within a range of positions along the z direction, as recited in at least claim 1 of the '255 Patent.

270.     Furthermore, upon information and belief, these models perform a method to align an electrophotographic printing engines in a plurality of different print assemblies that are each capable of printing on a receiver to form one or more final prints to form an apparatus for digital printing including corrections for cross-track misregistration comprising aligning a first printing engine to a second printing engine in a cross track direction (z direction) based on a cross track (z direction) position of the receiver as measured by the second engine and the measuring of the printing modules, as recited in at least claim 1 of the '255 Patent.

271.     Furthermore, upon information and belief, these models include a system for printing color images comprising a belt glosser for providing enhanced gloss to the pentachrome color image having the clear toner overcoat, as recited in at least claim 1 of the '255 Patent.

272.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

273.     Defendant's infringement of the '255 Patent has injured and continues to injure MASA in an amount to be proven at trial.

**COUNT XVI**
**(Direct Infringement of the '795 Patent pursuant to 35 U.S.C. § 271(a))**

274.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

275.    Defendant has infringed and continues to infringe one or more claims of the '795 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

276.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

277.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox WorkCentre 5335/5330/5325, and similar printers, have been without the permission, consent, authorization or license of MASA.

278.    By way of example, Defendant's products and services, including the Xerox WorkCentre 5335/5330/5325, infringe at least one claim, including at least claim 1, of the '795 Patent.

279.    For example, upon information and belief, these models include a printer comprising a marking mechanism for producing an image on media, as recited in at least claim 1 of the '795 Patent.

280.    Furthermore, upon information and belief, these models include a printer comprising a tray for sheets of image receiver media, as recited in at least claim 1 of the '795 Patent.

281.    Furthermore, upon information and belief, these models include a printer comprising a sheet feeding mechanism including a drive for advancing the sheets of image receiver media past the marking mechanism, said sheet feeding mechanism having a picker to

remove the sheets of image receiver media from an aligned tray, as recited in at least claim 1 of the '795 Patent.

282.     Furthermore, upon information and belief, these models include a printer comprising a media load position at which the tray is accessible to an operator for inserting a supply of the sheets of image receiver media, as recited in at least claim 1 of the '795 Patent.

283.     Furthermore, upon information and belief, these models include a printer comprising a media pick position at which the tray is aligned with the picker, as recited in at least claim 1 of the '795 Patent.

284.     Furthermore, upon information and belief, these models include a printer comprising a tray moving mechanism adapted to selectively move the tray between the media load position and the media pick position, as recited in at least claim 1 of the '795 Patent.

285.     Furthermore, upon information and belief, these models include a printer comprising a transmission (1) engagable to connect the drive of the sheet feeding mechanism to the tray moving mechanism, whereby the tray is moved between the pick position and the media load position by the drive and (2) disengagable to enable advancement of the sheets of image receiver media without movement of the tray, as recited in at least claim 1 of the '795 Patent.

286.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

287.     Defendant's infringement of the '795 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT XVII
### (Direct Infringement of the '089 Patent pursuant to 35 U.S.C. § 271(a))

288.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

289.    Defendant has infringed and continues to infringe one or more claims of the '089 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

290.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

291.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox WorkCentre 6505 and Phaser 6500, and similar printers, have been without the permission, consent, authorization or license of MASA.

292.    By way of example, Defendant's products and services, including the Xerox Phaser 6500, infringe at least one claim, including at least claim 1, of the '089 Patent.

293.    For example, upon information and belief, these models perform a method of printing using an electrophotographic print engine including a single development module that can develop a single toner on a primary imaging member of the single development module and a multi-development module that can develop either one of two toners on a primary imaging member of the multi-development module, the method comprising determining a combination of toners required to form an image according to a job specification, as recited in at least claim 1 of the '089 Patent.

294.    Furthermore, upon information and belief, these models perform a method of printing using an electrophotographic print engine including a single development module that can develop a single toner on a primary imaging member of the single development module and

a multi-development module that can develop either one of two toners on a primary imaging member of the multi-development module, the method comprising determining that the combination of toners includes two toners in the multi-development module, developing and transferring first toner separations onto a receiver including a first one of the two toners in a development station of the multi-development module, as recited in at least claim 1 of the '089 Patent.

295.     Furthermore, upon information and belief, these models perform a method of printing using an electrophotographic print engine including a single development module that can develop a single toner on a primary imaging member of the single development module and a multi-development module that can develop either one of two toners on a primary imaging member of the multi-development module, the method comprising passing the receiver through the print engine a second time, as recited in at least claim 1 of the '089 Patent.

296.     Furthermore, upon information and belief, these models perform a method of printing using an electrophotographic print engine including a single development module that can develop a single toner on a primary imaging member of the single development module and a multi-development module that can develop either one of two toners on a primary imaging member of the multi-development module, the method comprising developing and transferring a color separation using the other of the two toners in the multi-development module onto the first toner separations, as recited in at least claim 1 of the '089 Patent.

297.     Furthermore, upon information and belief, these models perform a method of printing using an electrophotographic print engine including a single development module that can develop a single toner on a primary imaging member of the single development module and a multi-development module that can develop either one of two toners on a primary imaging

member of the multi-development module, the method comprising determining that the identified combination of toners does not include two toners in two development stations in the multi-development module, forming and transferring a first combination of the identified toner separations onto the receiver and diverting the receiver to at least one of an inverter and an exit, as recited in at least claim 1 of the '089 Patent.

298.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

299.    Defendant's infringement of the '089 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## <u>COUNT XVIII</u>
### (Direct Infringement of the '022 Patent pursuant to 35 U.S.C. § 271(a))

300.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

301.    Defendant has infringed and continues to infringe one or more claims of the '022 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

302.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

303.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Phaser 7800, and similar printers, have been without the permission, consent, authorization or license of MASA.

304.    By way of example, Defendant's products and services, including the Xerox Phaser 7800, infringe at least one claim, including at least claim 1, of the '022 Patent.

305.    For example, upon information and belief, these models include a printing apparatus comprising a base to support the printing apparatus during operation, as recited in at least claim 1 of the '022 Patent.

306.    Furthermore, upon information and belief, these models include a printing apparatus comprising a wall extending at an angle from the base, as recited in at least claim 1 of the '022 Patent.

307.    Furthermore, upon information and belief, these models include a printing apparatus comprising a print region, as recited in at least claim 1 of the '022 Patent.

308.    Furthermore, upon information and belief, these models include a printing apparatus comprising a media input holder, as recited in at least claim 1 of the '022 Patent.

309.    Furthermore, upon information and belief, these models include a printing apparatus comprising a media advance system for advancing media from the media input holder to the print region for printing on a first side of a sheet of media, as recited in at least claim 1 of the '022 Patent.

310.    Furthermore, upon information and belief, these models include a printing apparatus comprising a pivotable duplexing unit comprising a duplexing media path for reversing the sheet of media in order to print on a second side of the sheet opposite the first side, wherein the pivotable duplexing unit is attached to the wall using a hinge having an axis that is substantially perpendicular to the base, and wherein the wall includes a support member of the hinge and the pivotable duplexing unit includes a pin member of the hinge for pivoting relative to the support member of the hinge, as recited in at least claim 1 of the '022 Patent.

311.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

312.    Defendant's infringement of the '022 Patent has injured and continues to injure MASA in an amount to be proven at trial.

### COUNT XIX
### (Direct Infringement of the '113 Patent pursuant to 35 U.S.C. § 271(a))

313.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

314.    Defendant has infringed and continues to infringe one or more claims of the '113 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

315.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

316.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Brenva HD Production Inkjet Press and similar printers, have been without the permission, consent, authorization or license of MASA.

317.    By way of example, Defendant's products and services, including the Xerox Brenva HD Production Inkjet Press, infringe at least one claim, including at least claim 1, of the '113 Patent.

318.    For example, upon information and belief, these models include a multifunction printer comprising a printing apparatus including a printer chassis having a media input region, a printing region, and a media support element, a carriage configured to move a printhead in a carriage scan direction along the printing region and a plurality of rollers configured to transport

a recording medium from the media input region, across the media support element and to the printing region, as recited in at least claim 1 of the '113 Patent.

319.    Furthermore, upon information and belief, these models include a multifunction printer comprising a scanning apparatus having a transparent platen for supporting a document to be scanned in order to convert an image into digitized data, the scanning apparatus including a base that is affixed to the printer chassis, wherein the base of the scanning apparatus comprises a guide for guiding the recording medium through the media transport path toward the printing region wherein the plurality of rollers includes a feed roller; the multifunction printer further comprising a biasing member configured to form a nip against the feed roller, wherein the biasing member is affixed to the base of the scanning apparatus, as recited in at least claim 1 of the '113 Patent.

320.    As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

321.    Defendant's infringement of the '113 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## COUNT XX
### (Direct Infringement of the '239 Patent pursuant to 35 U.S.C. § 271(a))

322.    MASA repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

323.    Defendant has infringed and continues to infringe one or more claims of the '239 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a).

324.    Defendant's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

325.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services, including but not limited to, Xerox Phaser 6500  and similar printers, have been without the permission, consent, authorization or license of MASA.

326.     By way of example, Defendant's products and services, including the Xerox Phaser 6500, infringe at least one claim, including at least claim 1, of the '239 Patent.

327.     For example, upon information and belief, these models include a device for moving a plurality of pressure rollers relative to respective counter rollers in a printing machine, said device comprising a plurality of movably supported pressure roller carriers, each supporting respectively one pressure roller, said pressure roller carriers being movable between a contact position and a non-contact position with each of said pressure roller carriers being biased via a biasing unit in a direction of the contact position, as recited in at least claim 1 of the '239 Patent.

328.     Furthermore, upon information and belief, these models include a device for moving a plurality of pressure rollers relative to respective counter rollers in a printing machine, said device comprising at least one actuation element connecting at least two pressure roller carriers to a shared actuation device, wherein the pressure roller carriers are adapted to automatically move to the non-contact position when the actuation device is in its non-energy mode, as recited in at least claim 1 of the '113 Patent.

329.     As a result of Defendant's unlawful activities, MASA has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, MASA is entitled to preliminary and/or permanent injunctive relief.

330.     Defendant's infringement of the '239 Patent has injured and continues to injure MASA in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, MASA prays for judgment and relief as follows:

A.      An entry of judgment holding Defendant has infringed and is infringing United States Patent Nos. 6,203,005, 6,305,684, 6,411,314, 6,462,756, 6,509,974, 6,718,285, 6,724,998, 6,799,005, 6,909,856, 6,993,278, 7,502,582, 7,658,375, 7,720,425, 8,005,415, 8,019,255, 8,220,795, 8,554,089, 8,591,022, 8,634,113, and 8,805,239;

B.      A preliminary and permanent injunction against Defendant and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert therewith from infringing United States Patent Nos. 6,203,005, 6,305,684, 6,411,314, 6,462,756, 6,509,974, 6,718,285, 6,724,998, 6,799,005, 6,909,856, 6,993,278, 7,502,582, 7,658,375, 7,720,425, 8,005,415, 8,019,255, 8,220,795, 8,554,089, 8,591,022, 8,634,113, and 8,805,239 and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.      An award to MASA of such damages as it shall prove at trial against Defendant that are adequate to fully compensate MASA for Defendant's infringement of United States Patent Nos. 6,203,005, 6,305,684, 6,411,314, 6,462,756, 6,509,974, 6,718,285, 6,724,998, 6,799,005, 6,909,856, 6,993,278, 7,502,582, 7,658,375, 7,720,425, 8,005,415, 8,019,255, 8,220,795, 8,554,089, 8,591,022, 8,634,113, and 8,805,239, said damages to be no less than a reasonable royalty;

D.      A finding that this case is "exceptional" and an award to MASA of its costs and reasonable attorney's fees, as provided by 35 U.S.C. § 285;

E.      An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of United States Patent Nos.

6,203,005, 6,305,684, 6,411,314, 6,462,756, 6,509,974, 6,718,285, 6,724,998, 6,799,005,

6,909,856, 6,993,278, 7,502,582, 7,658,375, 7,720,425, 8,005,415, 8,019,255, 8,220,795,

8,554,089, 8,591,022, 8,634,113, and 8,805,239; and

      F.     Such further and other relief as the Court may deem proper and just.

## **DEMAND FOR JURY TRIAL**

MASA demands a jury trial on all issues so triable.

 

Respectfully submitted,

Dated:  December 13, 2017

KRAMER LEVIN NAFTALIS
& FRANKEL LLP

Paul J. Andre (*pro hac vice* forthcoming)
Lisa Kobialka (*pro hac vice* forthcoming)
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com

Mark A. Baghdassarian (*pro hac vice* forthcoming)
1177 Avenue of the Americas
New York, NY 10001
Tel: 212.715.9100
Fax: 212.715.8000
mbaghdassarian@kramerlevin.com

By:   */s/ Daniel J. Fischer*
       KOLEY JESSEN PC, LLO
       Daniel J. Fischer (NE #22272)
       1125 South 103 Street
       Suite 800
       Omaha, NE  68124
       Tel: (402) 343-3757
       Fax: (402) 390-9005
       dan.fischer@koleyjessen.com

       *Attorneys for Plaintiff*
       MASA LLC